UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DUANE ALVES,
    Plaintiff,

v.

JOHN DALY, ARIEL COLLAZO,
CHRISTOPHER BORUM, LUIS
MARTINEZ, JONATHAN WELCH,
EDMOND M. RICHARDI, and NORTH
STREET STEAK HOUSE AND SPORTS
BAR, INC.,
    Defendants.

Civ. A. No. 12-10935-MLW

## MEMORANDUM AND ORDER

WOLF, D.J.                                                           June 29, 2015

On May 27, 2015, after a three-week trial, the jury returned a verdict against plaintiff Duane Alves on his claims for assault, battery, intentional infliction of emotional distress, false imprisonment, violations of the Massachusetts Civil Rights Act, and negligence. The sole remaining claims are Counts IX and X of the Second Amended Complaint, which allege that defendants Edmond Richardi and North Street Steakhouse (the "Steakhouse") committed unfair or deceptive acts in violation of Massachusetts General Laws Chapter 93A. These claims must be decided by the court. For the reasons explained below, the court is denying Alves Chapter 93A claims and entering judgment in favor of the defendants.

I. BACKGROUND

Alves brought this lawsuit in 2012, alleging that on the evening of May 25, 2011, he was assaulted and battered at the Steakhouse in Hyannis, Massachusetts. He alleged that he was a disc jockey working at the Steakhouse when he was attacked in two separate incidents by several off-duty police officers who were patrons at the Steakhouse. He claimed that the Steakhouse had inadequate security staff on duty to prevent or stop the fight, and that the Steakhouse failed to call the police promptly or to take steps to prevent the second assault.

In his Second Amended Complaint, Alves asserted claims for assault, battery, and violations of his federal rights pursuant to 42 U.S.C. §1983, among other things, against the officers. He also asserted claims for negligence and intentional infliction of emotional distress against the Steakhouse, its owner, Richardi, and two of its employees, Luis Martinez and Jonathan Welch (collectively, the "Steakhouse defendants").

Count IX of the plaintiff's Second Amended Complaint asserted a cause of action under Massachusetts General Laws, Chapter 93A Section 9, and Count X asserted a cause of action under Chapter 93A Section 11. Each count was alleged only against the Steakhouse and Richardi. Prior to trial, the Steakhouse and Richardi moved for partial summary judgment on Alves' Chapter 93A claims, arguing that a plaintiff cannot advance claims under both Chapter 93A

2

Sections 9 and 11 because the two sections are mutually exclusive. The Steakhouse urged the court to require that Alves proceed under §11 of the statute, which provides a cause of action for businesses rather than consumers, because he was employed as a disc jockey at the time he was injured. The court denied this motion because there was a material factual dispute as to whether Alves was acting in his capacity as a disc jockey or whether he was merely a patron at the bar at the time he was allegedly assaulted by the officers.

A jury trial on Alves' claims against the officers and the Steakhouse defendants began on May 5, 2015. The sole claim presented to the jury against the Steakhouse defendants alleged negligence. On May 27, 2015, the jury found for the defendants' on all of Alves' claims. Among other things, the jury found that the Steakhouse and its employees had been negligent, and that negligence had caused Alves harm, but that Alves' own comparative negligence exceeded that of the Steakhouse.

After trial, Alves and the Steakhouse submitted proposed findings of fact and conclusions of law regarding the Chapter 93A claims. The court did not seek advisory findings of fact from the jury on the Chapter 93A claims. Instead, the court has made independent findings of fact based on the evidence presented at trial. See Poly v. Moylan, 423 Mass. 141, 151 (1996).

3

II. LEGAL STANDARD

Massachusetts General Laws Chapter 93A provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L. ch. 93A, §(2)(a). Section 9 of Chapter 93A provides a private right of action for consumers, and Section 11 provides a private right of action for persons engaged in commerce. Compare id., §9, with id., §11. While both Sections 9 and 11 require proof of an unfair or deceptive act, Section 9 claims are judged under a "more forgiving consumer standard." Cummings v. HPG Intern., Inc., 244 F.3d 16, 26 (1st Cir. 2001).

Conduct is "deceptive" within the meaning of Chapter 93A "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." Aspinall v. Philip Morris Cos., 442 Mass. 381, 394 (Mass. 2004) (quoting Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 762, 777 (1980)). In deciding whether a business practice is "unfair" under Chapter 93A, Massachusetts courts apply a three-step analysis: "(1) whether the practice is at least within the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215,

4

243 (1st Cir. 2005) (citing PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 595 (1975)).

"A negligent act standing by itself does not give rise to a claim under c. 93A. There must in addition be evidence that the negligence was or resulted in an unfair and deceptive act or practice." Squeri v. McCarrick, 32 Mass. App. Ct. 203, 207 (1992); Poly v. Moylan, 423 Mass. 141, 151 (1996); Meyer v. Wagner, 429 Mass. 410, 424 (1999); Klairmont v. Gainsboro Rest., Inc., 465 Mass. 165, 176 (2013). Similarly, "a violation of a law or regulation . . . will be a violation of c. 93A §2(A), only if the conduct leading to the violation is both unfair or deceptive and occurs in trade or commerce." Klairmont, 465 Mass. at 175.

III. ANALYSIS

The court finds that North Street and Richardi were negligent and violated provisions of the Barnstable Town Code.[1] However, this conduct did not constitute a violation of Chapter 93A because it did not involve or result in any unfair or deceptive act. See Squeri, 32 Mass. App. Ct. at 207.

The facts proven by a preponderance of the credible evidence show that Steakhouse and Richardi were negligent in two ways. First, the security guard on duty, Jonathan Welch, left his post

---

[1] The acts and omissions in this case were committed by Steakhouse employees who were acting in the scope of their employment, and their acts are attributable to the Steakhouse. See Dias v. Brigham Medical Associates, Inc., 438 Mass. 317, 320 (2002).

5

prior to the initial fight between Alves and the off-duty officers. He was away from his post when defendant Christopher Borum was escorted out of the bar. This enabled Borum to rush back into the bar to at least attempt to join in the initial altercation. Welch's absence also prolonged the duration of the first altercation between Alves and the officers because there were fewer Steakhouse employees available to assist in breaking it up. This negligent conduct violated Barnstable Town Code §501-8(a), which required the Steakhouse "to ensure that a high degree of supervision is exercised over the conduct of the licensed establishment at all times."

Second, the bar employees delayed in calling the police when they should have done so immediately. The court finds that Martinez told Welch to call the police, but that Welch delayed unreasonably. Welch did not immediately call the police station. At some point he called a Barnstable officer who he knew. After failing to reach that officer, Welch called the police station. The police arrived quickly after that call. Welch's delay caused harm to Alves because, while waiting for the police to arrive, Alves went downstairs, punched James Hyde, who was pursuing Alves, and then was punched in the face by defendant Ariel Collazo. This delay in calling the police violated Barnstable Town Code §501-13(A), which required Steakhouse employees "to call the police to have patrons removed from the premises when such patrons are being

6

disruptive and they are unable to convince the patron to leave the premises voluntarily."

However, regardless of whether Alves's Chapter 93A claim is analyzed under §9 or the more stringent §11 standard, he has failed to show any "unfair" or "deceptive" act or practice by the Steakhouse or Richardi that would establish Chapter 93A liability. Alves has not shown that the Steakhouse's security practices "created a hazardous environment for patrons of the [Steakhouse's] business . . . of which the [Steakhouse] w[as] well aware." Klaremont, 165 Mass. at 177. There was, for example, no evidence that anyone had been harmed previously as a result of comparable negligence by the Steakhouse. Therefore, the court finds that the Steakhouse did not act deceptively by implicitly holding itself out to be a safe establishment.

In addition, the Steakhouse's negligence was not "unfair" within the meaning of Chapter 93A. The conduct at issue was not "immoral, unethical, oppressive, or unscrupulous." Mass. Eye & Ear Infirmary, 412 F.3d at 243. Rather, the conduct of the Steakhouse and its employees on May 25, 2011, was "mere negligence," and did not involve the "dishonesty, fraud, deceit, or misrepresentation" necessary to constitute a Chapter 93A violation. See Darviris v. Petros, 442 Mass. 274, 278 (2004) (quoting Poly v. Moylan, 423 Mass. 141, 151 (1996)).

IV. ORDER

In view of the foregoing, it is hereby ORDERED that judgment shall enter in favor of defendants North Street Steakhouse and Sportsbar, Inc., and Edmond Richardi on Counts IX and X of the Second Amended Complaint.

_____
UNITED STATES DISTRICT JUDGE